[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Having heard the testimony of the witnesses and after reviewing the evidence submitted as exhibits as well as the post-trial filings of the parties, the court makes the following findings of fact.
1. In April, 1999, plaintiff Fuelrite, L.L.C. provided credit to trucking companies under the terms of a credit agreement whereby the trucking company could purchase fuel at discount rates at fuel stations affiliated with Fuelrite.
2. At all times relevant, David Gustafson has been a member of Fuelrite and is the person responsible for the operation of Fuelrite's business.
3. In the spring of 1999, JMR Transport, Inc. (JMR) was a trucking company which hauled waste from a transfer station in Danbury for disposal elsewhere.
4. At all times relevant, Rachel Moffitt, Rebecca Moffitt and James Moffitt have been officers or employees of JMR.
5. On April 1, 1999, JMR, acting through Rachel Moffitt, submitted an application for a Fuelrite Account. Rachel Moffitt signed a personal guaranty for the account (Plaintiff's Exhibit 1).
6. Upon review of the credit status of JMR and Rachel Moffitt, David Gustafson determined that Fuelrite would require additional guarantees to open the JMR Fuelrite Account. Gustafson so informed Rebecca Moffitt.
7. On or about June 18, 1999, James S. Moffitt signed a personal guaranty of JMR's Fuelrite Account (Plaintiff's Exhibit 3).
8. On or about June 22, 1999, defendant Carmine Mascia signed a personal guaranty of JMR's Fuelrite Account (Plaintiff's Exhibit 2). CT Page 15420
9. When he signed the personal guaranty, defendant Carmine Mascia understood what he was signing, and that he would be personally responsible for the payment of sums that might become due to Fuelrite thereafter as a result of JMR's use of the Fuelrite Fleet Card Account.
10. Defendant Carmine Mascia's obligations as guarantor of JMR's debt to Fuelrite included the terms and conditions stated in the Fuelrite Fleet Card Account Agreement provided on the back of the guaranty which Mr. Mascia signed.
11. Fuelrite extended credit to JMR through the remainder of 1999 and in January, 2000.
12. As of January 26, 2000, Fuelrite's records showed that JMR was in arrears on its payments in the total amount of $64,951.28.
13. Plaintiff's Exhibit 6 is an account history which shows paid and unpaid JMR invoices through January 31, 2000 as entered in Fuelrite's business records.
14. Plaintiff's Exhibit 7 is a summary of unpaid JMR invoices according to Fuelrite's business needs as of January 26, 2000.
15. In late January, 2000, Fuelrite began a lawsuit against JMR and its guarantors to collect the $64,951.28 then due.
16. Pursuant to the Fleet Card Account Agreement, Fuelrite attached accounts of JMR with Webster Bank and Transfer Systems, Inc. ex parte.
17. On February 22, 2000, Fuelrite entered into a Settlement Agreement, so-called, with JMR, James S. Moffitt and Rebecca A. Moffitt concerning the $64,951.28 due from JMR.
18. Under the terms of the Settlement Agreement, James S. Moffitt and Rebecca A. Moffitt agreed to execute a promissory note in the amount of $67,681.42 (being the sum of $64,951.28 due from JMR plus attorney's fees and costs), and to secure the promissory note with a second mortgage of certain property located in Danbury, CT (Plaintiff's Exhibit 5).
19. Under the terms of the Settlement Agreement, Fuelrite agreed to release its garnishments against Webster Bank and Transfer Systems, Inc. and to withdraw its lawsuit (Plaintiff's Exhibit 5).
20. On February 22, 2002, James S. Moffitt and Rebecca A. Moffitt signed and delivered both the promissory note for $67,681.42 and the mortgage CT Page 15421 securing the note.
21. Thereafter, Fuelrite released the two garnishments and withdrew its lawsuit.
22. Carmine Mascia was not a party to the February 22, 2000 Settlement Agreement.
23. On December 15, 1999, JMR issued its check No. 1099 payable to Fuelrite in the amount of $16,527.70 (Plaintiff's Exhibit 8).
24. Fuelrite deposited the check on or about December 16, 2000 but the check was returned for insufficient funds on or about December 21, 1999.
25. Plaintiff's Exhibit 6 does not reflect the returned JMR check.
26. When Fuelrite determined the total amount of JMR's indebtedness at the end of January, 2000, it did not take into account JMR's returned check No. 1099.
27. In reviewing Fuelrite's invoice summarizing JMR's indebtedness in January and February, 2000, Rebecca Moffitt was not aware that JMR's returned check No. 1099 was not taken into account. Instead, she assumed that the invoice provided by Fuelrite (Plaintiff's Exhibit 7) was accurate.
28. Fuelrite did not discover that JMR's returned check No. 1099 had not been debited to JMR's account until May, 2000, during a review of company's records.
29. At all times relevant, JMR remained indebted to Fuelrite in the amount of the dishonored check, i.e. in the amount of $16,527.70.
30. On June 5, 2000, Fuelrite, through its attorney, demanded payment from defendant Mascia of the amount of the dishonored check, plus finance charges (Plaintiff's Exhibit 9).
31. Defendant Mascia has not paid any portion of the amount which Fuelrite demanded.
32. Interest on JMR's returned check No. 1099 from December 15, 1999 (the date of the check) through November 22, 2002 is calculated at $8,742.94.
33. Third party defendant Rachel Moffitt, who was present during the CT Page 15422 trial, is in default for failure to appear.
Judgment shall enter in favor of the plaintiff against the defendant Carmine Mascia in the amount of $25,270.64 which includes contract interest through November 22, 2002. Plaintiff filed an Offer of Judgment on June 3, 2002 in the amount of $12,000.00. Plaintiff is entitled under Connecticut Practice book § 17-18 to additional interest in the amount of $1,429.00.
Judgment shall enter in favor of the third party plaintiff Carmine Mascia against the third party defendant Rachel Moffitt in the amount of $25,270.64.
DUBAY, J. CT Page 15423